# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNTIED STATES, ex rel. JOHN M. KALEC, M.D. and LORETA KALEC, and THE STATE of ILLINOIS ex rel. JOHN M. KALEC, M.D. and LORETA KALEC, | )<br>)<br>)<br>)<br>) |
| Plaintiffs-Relators, | ) |
| | ) No. 12 C 69 |
| v. | ) |
| | ) Judge Sara L. Ellis |
| NUWAVE MONITORING, LLC, THOMAS BOECKER, and GREG LESIAK, individuals, | )<br>)<br>)<br>) |
| Defendants. | ) |

## OPINION AND ORDER

Believing that their employer was fraudulently billing Medicare and Medicaid for services that they rendered as a physician and neuro-monitoring technician, respectively, Plaintiffs-Relators John and Loreta Kalec ("Dr. Kalec" and "Loreta"), brought a *qui tam* action against Defendants NuWave Monitoring, LLC ("NuWave"), and Thomas Boecker and Greg Lesiak ("Defendants Boecker and Lesiak") as owners and operators of NuWave, alleging that Defendants conspired to submit and submitted fraudulent claims to Medicare and Medicaid in violation of the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.*, and the equivalent provisions of the Illinois False Claims Act ("IFCA"), 740 Ill. Comp. Stat. § 175/1 *et seq.* [1] Defendants filed a motion to dismiss Plaintiffs' FCA and IFCA claims pursuant to Federal Rule of Civil Procedure 12(b)(6) arguing that the Complaint fails to meet the heightened pleading

---

[1] The United States and the State of Illinois declined to intervene in the matter. [16]

standard of Rule 9(b). [2] Because Plaintiffs have adequately pleaded Count I with respect to Defendant NuWave, Defendants' motion to dismiss Count I is denied. However, Plaintiffs failed to adequately plead Count I with respect to Defendants Boecker and Lesiak, as well as Counts II, IV, V and VI with respect to all Defendants. The Court, therefore, grants Defendants' motion [63] as to those Counts.

## BACKGROUND[3]

NuWave, an Indiana limited liability corporation, provides neuro-monitoring services to hospitals throughout Illinois and Indiana. Neuro-monitoring is a service whereby technicians and doctors monitor a patient's neurological activity during surgical procedures in an attempt to prevent neurological damage, including brain damage. NuWave provides the monitoring equipment as well as on-site technicians to set up the equipment and observe the monitors during surgery. Loreta worked as a technician for NuWave from November 2009 until June 2014. NuWave also employs licensed medical doctors who monitor the data relayed by the neuro-monitoring equipment remotely and advise the surgical staff as to the patient's neurological status when necessary. Due to the nature of the services, the off-site physicians are able to monitor multiple patients at a time. Dr. Kalec, a licensed medical doctor, provided remote neuro-monitoring services for NuWave from November 2009 through August 2011. Dr. Kalec typically monitored three to five surgical patients at a time.

Neuro-monitoring is a designated health service. In order for the service to be provided, therefore, it must be requested by the surgeon performing the surgery. Dr. James Gottlieb ("Dr.

---

[2] Plaintiffs' Amended Complaint [32] ("Complaint") joined numerous hospitals as Defendants. Plaintiffs subsequently voluntarily dismissed the hospital Defendants. [62] Thus, the only remaining Defendants are NuWave Monitoring, LLC, Thomas Boecker, and Greg Lesiak.
[3] The facts in the background section are taken from Plaintiffs' Complaint and are presumed true for the purpose of resolving Defendants' motion to dismiss. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011).

Gottlieb") requested that NuWave perform neuro-monitoring services in a large number of his cases from 2009 to the present. NuWave compensated Dr. Gottlieb for these referrals by making him a Director of NuWave and paying him a salary despite the fact that he did not perform any services for NuWave in this capacity.

NuWave is considered a provider of medical services, able to bill both Medicare and Medicaid. Medicare and Medicaid claims for neuro-monitoring services include both a technical and professional component. The technical component is billed by the hospital and includes hospital overhead, the cost of NuWave's technicians, and the cost of NuWave's monitoring equipment. NuWave charges most hospitals a five-hour minimum for its technicians' services regardless of whether the procedure lasts five hours. For a few other hospitals, NuWave directs its technicians to start billing their time an hour before the patient enters the surgical suite and to continue billing their time for fifteen minutes after the patient leaves the room. This billing practice was explained to Loreta and other NuWave technicians in a June 27, 2011 email. These billing practices are in direct violation of Medicare's policy of reimbursing providers solely for actual time spent monitoring patients. Nonetheless, NuWave submitted invoices to hospitals based on these fraudulent billing practices and the hospitals knowingly used this fraudulent documentation in preparing its claims to Medicare and Medicaid. Medicare and Medicaid paid NuWave, through the hospitals, for the falsely inflated technician time.

The professional component of a Medicare and Medicaid claim compensates the physician for his time spent providing neuro-monitoring services. Unlike the technical component, this portion of the claim is prepared and submitted by NuWave. NuWave is required to certify the accuracy of each claim pursuant to 42 C.F.R. §§ 424.32(a)(3), 424.33. While Medicare allows physicians to provide neuro-monitoring services to multiple patients at one

time, it only reimburses doctors for their actual time spent monitoring each patient. *See* Medicare's Local Coverage Determination, LCD 2924 ("[m]ore than one patient may be monitored at once; however, claims for physician services must be submitted for the time devoted to each individual patient by the monitoring physician, i.e., not all patients simultaneously."). Doc. 32 ¶ 24. In other words, if a physician monitors three patients during one six-hour time period, the physician may bill Medicare only for a total of six hours; he may not bill for 18 hours of neuro-monitoring services. The physician must apportion his time for each of the three patients into the six hours.

Defendants repeatedly violated these Medicare and Medicaid regulations by billing the physicians' time simultaneously for multiple patients and by falsely inflating its technicians' time. Specifically, on June 18, 2010, Dr. Kalec monitored eight surgeries over the course of eight hours. The respective surgeries lasted four, five, one, four, five, two, one, and one hours. NuWave prepared the professional component of its Medicare and Medicaid claims for Dr. Kalec's services claiming twenty-three hours of neuro-monitoring services rather than eight hours. NuWave received reimbursement from Medicare and Medicaid for these surgeries and made disbursements to Dr. Kalec in accordance with his agreement with NuWave. In addition, for each June 18 surgery, NuWave billed each hospital at least five hours for its technicians' time or by adding an additional hour and fifteen minutes of technician time to each surgery, depending on which hospital hosted the surgery. The hospitals knew that Defendants were improperly inflating their technicians' time because the hospitals knew the true duration of each procedure. Regardless, the hospitals submitted the false claims to Medicare and Medicaid. NuWave collected all amounts paid by Medicare and Medicaid to the hospitals for these claims.

Defendants Boecker and Lesiak, owners and operators of NuWave, knew that NuWave was not properly apportioning their physicians' neuro-monitoring time and that NuWave was falsely inflating its technicians' time. Suspecting such, Dr. Kalec asked Defendants Boecker and Lesiak whether NuWave was properly billing Medicare and Medicaid. Both Defendants responded that NuWave's billing practices were not Dr. Kalec's concern. Dr. Kalec demanded to see the bills submitted for his services and was denied. Thereafter, Defendants Boecker and Lesiak pressured Dr. Kalec to resign in 2011.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). This "ordinarily requires describing the 'who, what, when, where, and how' of the fraud, although the exact level of particularity that is required will necessarily differ based on the facts of the case." *AnchorBank*, 649 F.3d at 615 (citation

5

omitted). Rule 9(b) applies to "all averments of fraud, not claims of fraud." *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). "A claim that 'sounds in fraud'—in other words, one that is premised upon a course of fraudulent conduct—can implicate Rule 9(b)'s heightened pleading requirements." *Id.*

## ANALYSIS

The FCA and IFCA prohibit knowingly presenting, or causing to be presented to the government, a false or fraudulent claim for payment, 31 U.S.C. § 3729(a)(1)(A); 740 Ill. Comp. Stat. § 175/3(a)(1)(A), knowingly making or using a false record or statement that is material to a false or fraudulent claim paid by the government, § 3729(a)(1)(B); § 175/3(a)(1)(B), or conspiring to do either, § 3729(a)(1)(C); § 175/3(a)(1)(C). The FCA permits private citizens, or "relators," to file a civil action on behalf of the government to recover monies that the government paid on account of the false claims. 31 U.S.C. § 3730(b)(1). These actions are referred to as *qui tam* actions. *United States ex rel. Yannacopoulos v. General Dynamics*, 652 F.3d 818, 822 (7th Cir. 2011).

To adequately plead a violation of § 3729(a)(1)(A), a plaintiff must allege "(1) a false or fraudulent claim; (2) which was presented, or caused to be presented, by the defendant to the United States for payment or approval; (3) with the knowledge that the claim was false." *United States ex rel. Fowler v. Caremark RX, LLC*, 496 F.3d 730, 741 (7th Cir. 2007), *overruled on other grounds by Glaser v. Wound Care Consultants. Inc.*, 570 F.3d 907 (7th Cir. 2009). To adequately plead a violation of § 3729(a)(1)(B), a plaintiff must allege that "(1) the [d]efendants made a statement in order to receive payment from the government; (2) the statement was false; and (3) the [d]efendants knew it was false." *United States ex rel. Walner v. NorthShore Univ. Healthsystem*, 660 F. Supp. 2d 891, 896 (N.D. Ill. 2009); *United States ex rel. Lisitza v. Par*

6

*Pharm. Comp., Inc.,* No. 06 C 6131, 2013 WL 870623, at *3 n.5 (N.D. Ill. Mar. 7, 2013) (citing *United States ex rel. Dickson v. Bristol Myers Squibb Co.*, 289 F.R.D. 271, 274 n.3 (S.D. Ill. 2013). Finally, to adequately plead a violation of § 3729(a)(1)(C), a plaintiff must allege "that the defendant conspired with one or more persons to have a fraudulent claim paid by the [government]; that one or more of the conspirators performed any act to have such a claim paid by the [government]; [and] that the [government] suffered damages as a result of the claim." *Lisitza*, 2013 WL 870623, at *2.

The FCA "is an anti-fraud statute and claims under it are subject to the heightened pleading requirements of Rule 9(b)." *Thulin v. Shopko Stores Operating Co., LLC*, 771 F.3d 994, 998 (7th Cir. 2014). Where an alleged FCA scheme involves numerous transactions occurring over the course of several years, a plaintiff need not provide the details of every fraudulent transaction. The plaintiff is required, however, to provide representative examples. *United States ex rel. Geschrey v. Generations Healthcare, LLC*, 922 F. Supp. 2d 695, 702 (N.D. Ill. 2012) (citing *United States ex rel. Obert-Hong v. Advocate Health Care*, No. 99 C 5806, 2001 WL 303692, at *3 (N.D. Ill. Mar. 28, 2001)).

## I. Count I

Count I alleges that Defendants violated the false claim, false record and conspiracy provisions of § 3729(a)(1) by failing to properly apportion Dr. Kalec's time performing neuro-monitoring services and then falsely submitting requests for payment based on his fraudulent time records. Defendants move to dismiss Count I for failure to comply with Rule 9(b)'s heightened pleading requirements. Specifically, Defendants argue that Plaintiffs fail to allege that Defendants submitted a claim to Medicare for Dr. Kalec's June 18, 2010 services or that the Medicare policy regarding apportionment of time was in effect during the relevant time period.

In addition, Defendants argue that Plaintiffs fail to adequately allege Defendants Boecker or Lesiak's role in submitting a false claim to Medicare, sufficient specifics of NuWave's billing practices, and the creation of the fraudulent bill. Finally, Defendants suggest that to the extent that Dr. Kalec's bills improperly apportion his time, Dr. Kalec is responsible.[4] Plaintiffs respond that this Count is sufficiently pleaded. The Court takes each of Defendants' arguments in turn.

First, the Court rejects Defendants' argument that the Complaint fails to allege that NuWave submitted a claim to Medicare for Dr. Kalec's June 18, 2010 neuro-monitoring services. The Complaint alleges that "NuWave routinely billed Medicare for neuro-monitoring services performed by the same physician simultaneously for multiple patients, without apportioning the total monitoring time among such patients." Doc. 32 ¶ 25. The Complaint continues, "[f]or example, on June 18, 2010, Dr. Kalec performed neuro-monitoring services for 8 surgeries over an approximate 8 hour period of time," nevertheless, "NuWave [ ] billed for 23 hours of neuro-monitoring services for Dr. Kalec's services for June 18, 2010." Doc. 32 ¶ 26. Plaintiffs allege that "NuWave collected all amounts paid by Medicare for these claims." Doc. 32 ¶ 27. In other words, Plaintiffs allege that the Defendants routinely fraudulently billed Medicare by improperly apportioning its doctors' time and cite Dr. Kalec's June 18, 2010 services as a representative example of this fraudulent billing practice.

Taking these allegations as true, as the Court must, the Court can reasonably infer that NuWave submitted a claim to Medicare for the entirety of Dr. Kalec's June 18, 2010 services. *See United States ex rel. Lusby v. Rolls-Royce Corp.,* 570 F.3d 849 (7th Cir. 2009) (court could reasonably infer that false claims were submitted to the government given that payment was made); *see Geschrey*, 922 F. Supp. 2d at 705 – 06 (despite lack of allegations regarding actual

---

[4] Defendants' argument that Dr. Kalec is responsible for any improper claims submitted to the government is not an attack on the sufficiency of the pleadings but a substantive defense to the stated cause of action. As such, the Court declines to address the argument further at this stage of the litigation.

8

submission of claims to government, court could reasonably infer that defendants had submitted fraudulent bills to the government based on alleged practice). As the physician who performed the services, and was subsequently paid for these services, Dr. Kalec is in a position to know how many hours he worked, and what he was ultimately paid for this work. The Court's conclusion is not contrary to the cases cited by Defendants. Unlike in *Fowler*, the Complaint alleges that NuWave submitted a claim to Medicare for each of the eight surgeries performed by Dr. Kalec on June 18, 2010. *See United States ex rel. Fowler v. Caremark RX, Inc.*, No. 03 C 8714, 2006 WL 2425331, at *6 (N.D. Ill. Aug. 21, 2006) (dismissing FCA claim for failure to "tie a specific fraudulent transaction to an invoice submitted to the government"). Plaintiffs are not required to cite to or submit an invoice at this stage of the litigation, even under Rule 9(b)'s heightened pleading standards. *See Lusby*, 570 F.3d at 854 (finding that because "much knowledge is inferential," relator need not produce invoices at outset of litigation). One of the primary purposes of Rule 9(b)'s heightened pleading requirements is to provide notice to the defendants of the claims lodged against them. *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777 – 78 (7th Cir. 1994) ("[F]air notice is 'perhaps the most basic consideration' underlying Rule 9(b)") (quoting 5 Wright & Miller, *Federal Practice and Procedure* 1298, at 648 (1969)). The Court finds that Plaintiffs' Complaint provides adequate notice of the claims against them.[5]

Similarly, the Court rejects the Defendants' argument that Plaintiffs fail to adequately allege that the Medicare policy regarding apportionment of time was in effect during the relevant

---

[5] For these reasons, the Court also rejects Defendants' argument that Plaintiffs' claim does not adequately provide the details of NuWave's billing practices. Defendants have not cited to, and the Court is unaware of, any authority which requires a plaintiff to allege such facts in order to adequately plead an FCA cause of action. On the contrary, this is the sort of information to which a plaintiff is unlikely to have access unless they are an employee of the defendant company's finance department. *See Lusby*, 570 F.3d at 854 (declining to require a plaintiff to submit invoices in order to sufficiently allege an FCA claim "[s]ince a relator is unlikely to have these documents unless he works in the defendant's accounting department").

time period. Plaintiffs' Complaint alleges that "Medicare's Local Coverage Determination…LCD 2924, provided: More than one patient may be monitored at once; however, claims for physician services must be submitted for the time devoted to each individual patient by the monitoring physician, i.e., not all patients simultaneously." Doc. 32 ¶ 24. Plaintiffs list additional neurological procedures that allegedly have the same policy. Plaintiffs allege that Medicare requires providers to agree to follow these policies when submitting claims. Finally, Plaintiffs state that NuWave repeatedly billed Medicare without properly apportioning the physician's time. Reading these allegations together, and drawing all reasonable inferences in Plaintiffs' favor, Plaintiffs have sufficiently alleged that NuWave was required to comply with Medicare's time apportionment policy during the relevant time period. While Plaintiffs did not append the policy to their complaint, or expressly allege that the quoted Medicare policy was in effect from 2009 through 2011, this deficiency is not fatal. It is enough that Plaintiffs quoted the specific policy, stated that it applied to providers seeking reimbursement from Medicare, and alleged that NuWave failed to comply with the policy from 2009 through 2011. Defendants do not cite any authority which would require the Court to find otherwise.

The Court finds the Defendants' argument as to Defendants Boecker and Lesiak to be more persuasive. Plaintiffs only allegations against Defendants Boecker and Lesiak in Count I are that the individual Defendants knew that NuWave was not properly apportioning its physicians' time and that they denied Dr. Kalec access to NuWave's bills. While Rule 9(b) allows knowledge to be alleged generally, mere knowledge of a fraud is insufficient to sustain an FCA cause of action. *Lisitza*, 2013 WL 870623, at *4. To sustain a cause of action under the false claim and false record provisions of the FCA, Plaintiffs must allege that Defendants Boecker or Lesiak had an active role in submitting a false claim to the government or in

preparing fraudulent documents that were material to a claim to the government. *See United States ex rel. Gross v. AIDS Research Alliance-Chicago*, 415 F.3d 601, 604 (7th Cir. 2005); *see Walner*, 660 F. Supp. 2d at 896; *see Lisitza*, 2013 WL 870623, at *4 ("[k]nowledge is a necessary but insufficient basis for liability" citing *United States ex rel. Tyson v. Amerigroup Ill., Inc.*, 488 F. Supp. 2d 719, 736 (N.D. Ill. 2007)). Plaintiffs' Complaint fails to allege any such action taken by Defendants Boecker or Lesiak. Likewise, to adequately plead that Defendants Boecker and Lesiak engaged in a conspiracy under the FCA, Plaintiffs must allege the existence of an agreement between the Defendants to violate the FCA. *Lisitza*, 2013 WL 870623, at *2, 4. No such allegation is found in Plaintiffs' Complaint.

Plaintiffs attempt to salvage their claim by asserting in its response brief that Defendants Boecker and Lesiak, as owners and operators of NuWave, certified the accuracy of the claims submitted to the government. Doc. 70 at 6 – 7. This allegation is not found in Plaintiffs' Complaint, however. Because the Court's review is limited to the pleadings on a motion to dismiss, it may not consider allegations raised for the first time in Plaintiffs' opposition brief. *See Gen. Ele. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). Moreover, the regulations cited in Plaintiffs' response brief merely requires that the provider sign a claim, not that the provider certify the accuracy of the claim. *See* 42 C.F.R. §§ 424.32(a)(3), 424.33.

For these reasons, the Court denies Defendants' motion to dismiss Count I as to NuWave, but grants the motion as it relates to Defendants Boecker and Lesiak.

**II.     Count II**

Count II of Plaintiffs' Complaint alleges that Defendants violated the false claim, false record, and conspiracy provisions of § 3729(a)(1) by submitting falsely inflated invoices for

11

NuWave's technicians' time to hospitals knowing that the hospitals would use these false invoices to prepare their Medicare claims. Defendants move to dismiss Count II arguing that Plaintiffs fail to plead at least one example of a false claim that was submitted to Medicare. Defendants contend that Plaintiffs cannot provide such an example because none of the named hospitals submitted a false claim, which Plaintiffs conceded when they dismissed the named hospitals from this suit.[6] Finally, Defendants again argue that Plaintiffs fail to adequately plead Defendants Boecker and Lesiak's role in violating the FCA. Plaintiffs respond that they have sufficiently pleaded that Defendants prepared false records, submitted these records to the hospitals, and that the hospitals incorporated these false records into their Medicare claims.

As described above, the hospitals submit claims to Medicare for the technical component of the neuro-monitoring services, including NuWave's technicians' time. To assist the hospitals, NuWave submits documentation of the technicians' time. The hospitals then prepare a claim based on that documentation to submit to Medicare. Plaintiffs' Complaint references a blank NuWave billing form and an internal NuWave email, which allegedly demonstrate NuWave's policies of falsely inflating its technicians' time, whether by billing a minimum of five hours of technician time per surgical procedure (billing form) or adding an hour and fifteen minutes of technician time (email). Doc. 32, Exs. A, B. However,

> the FCA does not create liability merely for a health care provider's disregard of Government regulations or improper internal practices unless, as a result of such acts, the provider knowingly asks the Government to pay amounts it does not owe.

*United States ex rel. Dolan v. Long Grove Manor, et al.*, No. 10 C 368, 2014 WL 3583980, at *3 (N.D. Ill. July 18, 2014) (quoting *United States ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290

---

[6] There are a multitude of possible reasons, aside from the one advanced by Defendants, to support Plaintiffs' decision to dismiss the hospitals. The fact of the hospitals' dismissal does not mean that the hospitals or the remaining Defendants acted lawfully. The Court rejects this argument and declines to address it further.

F.3d 1301, 1311 (11th Cir. 2002)) (internal quotation marks omitted). In order to adequately allege an FCA violation, therefore, a plaintiff must allege the actual submission of a fraudulent claim. *Id.* (citing *Mason v. Medline Indus., Inc.*, No. 07 C 5615, 2009 WL 1438096, at *7 (N.D. Ill. May 22, 2009)). "[T]he relator cannot merely describe a private scheme in detail but then…allege simply and without any stated reason for his belief that claims requesting illegal payments must have been submitted, were likely submitted or should have been submitted to the Government." *Id.* (quoting *Clausen*, 290 F.3d at 1311) (internal quotation marks omitted). A complaint must put forth "some indicia of reliability…to support the allegation of an actual false claim for payment being made to the Government." *Id.* (quoting *Clausen*, 290 F.3d at 1311).

Nothing in Plaintiffs' Complaint provides sufficient indicia of reliability such that the Court can reasonably infer that a false claim for payment was actually made. As in Count I, Plaintiffs cite the June 18, 2010 surgeries as a representative example of false claims being submitted to Medicare. The problem Plaintiffs face with using this example is that the alleged fraud in Count II stems from NuWave's policy of falsely inflating its technicians' time. While the Court can take notice of the time each surgery took to complete and extrapolate from there the time the technician spent with the patient, the Complaint is lacking in details regarding what NuWave submitted to the hospitals for the technician component for each of those surgeries. Neither Plaintiff is alleged to have been a technician who worked on any of the eight surgeries allegedly resulting in a false claim. As such, neither Plaintiff can attest to how many hours the technicians worked, how many hours the technicians claimed that they worked, or how many hours the technicians were ultimately paid for their work for any of the eight surgeries. Notably, Loreta, who was a technician employed by NuWave and in a position to provide an example of a false claim, does not allege any occasion in which her time was falsely inflated, or that she was

13

ever paid in excess of the number of hours that she actually worked. Further, the email relied on by Plaintiffs for establishing one of NuWave's fraudulent billing practices was sent in 2011, well after the June 18, 2010 surgeries. The Court is therefore unable to infer that the fraudulent billing practice outlined in the email was in effect at the time of the June 18, 2010 surgeries. The Complaint additionally fails to allege that any of the surgeries took place in any hospital subject to the five hour minimum billing for technician time or that the five hour minimum billing policy was in effect at the time of the June 18, 2010 surgeries. In sum, Plaintiffs are unable to "link specific allegations of deceit to specific claims for payment." *Dolan*, 2014 WL 3583980, at \*3 (citing *United States ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003)).

For these reasons, Plaintiffs fail to adequately plead a violation of the false claim provision of the FCA as to NuWave under Rule 9(b). Plaintiffs also fail to plead a violation of the false claim provision of the FCA as to Defendants Boecker and Lesiak for the reasons identified in Count I, and these claims are dismissed without prejudice.

## III.   Count IV[7]

Count IV alleges that the Defendants and the twenty-nine named hospitals conspired to submit fraudulently inflated claims for NuWave's technicians' time to Medicare for reimbursement. Defendants move to dismiss Count IV arguing that Plaintiffs fail to adequately allege an agreement between the Defendants and the named hospitals, that NuWave and the

---

[7] Count IV is titled "Violations of the False Claims Act, 31 U.S.C. § 3729, *et seq.*, Through a Conspiracy." Count IV contains essentially the same factual allegations as those set forth in Count II. Count IV alleges that "[b]y causing the submission of bills to Medicare based on improperly inflated time, through their conspiracy, Defendants" committed violations of the false claim and false record provisions of the FCA, as well as alleging a violation of the conspiracy provision of the FCA. It is thus unclear whether Count IV is intended to allege violations of the false claim and false record provisions of the FCA, or is intended to solely allege a violation of the conspiracy provision of the FCA. Because Count IV is based on the same factual allegations contained in Count II, to the extent Count IV alleges violations of the false claim and false record provisions of the FCA, those claims are dismissed for the reasons stated in Part II of this Opinion. The Court limits its analysis in this section to whether Plaintiffs have sufficiently pleaded a violation of the conspiracy provision of the FCA.

hospitals' alleged billing arrangement is not inherently unlawful, and that Plaintiffs fail to make any allegation with regard to Defendants Boecker's and Lesiak's involvement in the conspiracy.[8] Plaintiffs respond that their allegations that NuWave falsely inflated their technicians' time, and that the hospitals knowingly submitted claims based on the falsely inflated times to the government for reimbursement is sufficient to adequately plead an FCA conspiracy claim. Plaintiffs do not address Defendants' argument regarding Defendants Boecker and Lesiak.

By failing to respond to Defendants' motion to dismiss Defendants Boecker and Lesiak from Count IV, Plaintiffs forfeit the issue. *Copeling v. Ill. State Toll Highway Auth.*, No. 12 C 10316, 2014 WL 540443, at *2 (N.D. Ill. Feb. 11, 2014) (citing *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011)) (forfeiture occurs "where a litigant effectively abandons the litigation by not responding to alleged deficiencies in a motion to dismiss"). Even had Plaintiffs not forfeited this issue, the Court nevertheless finds that Plaintiffs' complaint fails to adequately plead Defendants Boecker's and Lesiak's involvement in the alleged conspiracy. Simply, Plaintiffs fail to allege that Defendants Boecker and Lesiak entered into an agreement with NuWave or the named hospitals to violate the FCA. Without an agreement, there can be no conspiracy. *See Lisitza*, 2013 WL 870623, at *2. The Court dismisses Count IV as to Defendants Boecker and Lesiak without prejudice.

As to NuWave, Plaintiffs allege that the hospitals knew that NuWave was falsely inflating their technicians' time on their invoices, and that NuWave knew that the hospitals were

---

[8] Defendants also argue that by dismissing the hospitals from the suit, Plaintiffs concede that the hospitals have not acted unlawfully, and that if the hospitals have not acted unlawfully, then Defendants have not acted unlawfully. As the Court states *supra* in n. 5, there are a multitude of possible reasons, aside from the one advanced by Defendants, which could have caused Plaintiffs to dismiss the hospitals from this suit. This fact does not mean that the hospitals or the remaining Defendants acted lawfully. An FCA conspiracy requires an agreement between two parties, not two defendants. For these reasons, the Court rejects this argument.

submitting claims to Medicare based on the falsely inflated technician time-cards. However, knowledge is not enough to sustain a conspiracy claim. Rather, "[f]acts must be alleged to suggest the existence of an agreement to violate the law." *Lisitza*, 2013 WL 870623, at *7 (citing *Twombly*, 550 U.S. at 557; *Ryan v. Mary Immaculate Queen Ctr.*, 188 F.3d 857, 860 (7th Cir. 1999)). While Plaintiffs' Complaint alleges that the hospitals "had an agreement with NuWave to compensate NuWave for the technician's time based upon the amount of time billed by NuWave," Doc. 32 ¶ 61, Plaintiffs' Complaint is devoid of any of the particulars of the alleged agreement required to satisfy Rule 9(b)'s heightened pleading standard. In particular, Plaintiffs fail to allege whom from NuWave or the hospitals engaged in the agreement to violate the FCA. *See Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 509 (7th Cir. 2007) (affirming dismissal of conspiracy claim under Rule 9(b) for failure to identify who within Goldman Sachs arranged the conspiracy); *Lisitza*, 2013 WL 870623, at *7 (conspiracy claim dismissed for failure to allege who participated in the agreement, finding corporations can only act through their agents). As stated above, Plaintiffs inadequately allege Defendants Boecker's and Lesiak's agreement to participate in a conspiracy to violate the FCA. Plaintiffs do not name any other agents of NuWave, or any agents of the named hospitals, as participants in the conspiracy. Accordingly, Plaintiffs fail to adequately plead the existence of a conspiracy to violate the FCA. The Court dismisses Count IV's conspiracy claim without prejudice.

## IV. Count V

Count V alleges that Defendants violated the false claim, false record, and conspiracy provisions of the FCA by paying Dr. Gottlieb for referrals in violation of the Anti-Kickback Statute ("AKS") and then submitting claims for reimbursement to Medicare arising from those illegal referrals. Defendants move to dismiss Count V arguing that Plaintiffs have failed to

16

identify at least one representative example of a false claim submitted in connection with a kickback, or the particulars of the kickback scheme. Again, Defendants argue that Plaintiffs have failed to adequately allege Defendants Boecker's and Lesiak's involvement in the kickback scheme. Plaintiffs respond by essentially reciting the allegations contained in the Complaint and summarily concluding that these allegations sufficiently plead an FCA cause of action based on an alleged kickback scheme. The Court disagrees.

The AKS prohibits the paying of remuneration to any person to induce that person to refer an individual for a service which may be paid for under a federal health care program. 42 U.S.C. § 1320a-7b(b)(2). While the AKS itself does not provide for a private right of action, courts within this jurisdiction have recognized FCA claims based on violations of the AKS. *See Dolan*, 2014 WL 3583980, at *4 (citing *United States v. Rogan*, 459 F. Supp. 2d 692, 717 (N.D. Ill. 2006), *aff'd*, 517 F.3d 449 (7th Cir. 2008)); *see United States v. Cancer Treatment Ctrs. of Am.*, No. 99 C 8287, 2005 WL 2035567 (N.D. Ill. Aug. 19, 2005). The Parties do not dispute that such claims are also governed by Rule 9(b) and case law makes clear that they are. *See Cancer Treatment Ctrs.*, 2005 WL 2035567, at *1 – 2; *see United States ex rel. Grenadyor v. Ukranian Vill. Pharm., Inc.*, 895 F. Supp. 2d 872, 877 – 78 (N.D. Ill. 2012), *rev'd on other grounds*, 772 F.3d 1102 (7th Cir. 2014). To adequately plead a violation of the FCA based on a violation of the AKS, therefore, Plaintiffs must allege the who, what, when, where, and how of the underlying alleged fraud. *AnchorBank*, 649 F.3d at 615. As previously explained, where an alleged scheme involves numerous transactions occurring over the course of several years, a plaintiff need not provide the details of every fraudulent transaction. The plaintiff is required, however, to provide representative examples. *Geschrey*, 922 F. Supp. 2d at 702 (citing *Obert-Hong*, 2001 WL 303692, at *3). Plaintiffs' failure to do so is fatal to their claim.

17

Plaintiffs' Complaint sets forth a bare outline of a scheme to violate the FCA through violating the AKS. Plaintiffs generally allege that Dr. Gottlieb "requested that NuWave perform neuro-monitoring services in a very large number of his cases from 2009 to present." Doc. 32 ¶ 72. Plaintiffs further allege that NuWave compensated Dr. Gottlieb for these referrals by giving him a paid position as a Director of NuWave, despite the fact that Dr. Gottlieb did not actually provide any services in that capacity. Doc. 32 ¶¶ 70, 73. Plaintiffs also allege that payment for NuWave's services "was made in large part by Medicare." Doc. 32 ¶¶ 75 – 77. Plaintiffs then summarily conclude that through this conduct, Defendants violated subsections (A) and (B) of § 1320a-7b(b)(2).

These allegations fail, however, to meet the particularity requirements of Rule 9(b). Specifically, Plaintiffs fail to identify a single patient that was referred by Dr. Gottlieb. As a result, Plaintiffs fail to specifically link the alleged kickback scheme to an actual claim that was submitted to Medicare. *See United States ex rel. Grenadyor v. Ukranian Vill. Pharm.*, 772 F.3d 1102, 1107 (7th Cir. 2014) (affirming the dismissal of an FCA cause of action for failure to link the violation of a federal regulation to submission of a false claim). Plaintiffs' § 3729(a)(1)(A) claim is thus dismissed. In addition, as with the other Counts, Plaintiffs fail to adequately allege Defendants Boecker's and Lesiak's role in the alleged kickback scheme. *See Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 778 (7th Cir. 1994) (affirming dismissal of fraud claim for failure to specifically identify each defendant's fraudulent conduct). For these reasons, the Court dismisses Count V of Plaintiffs' Complaint without prejudice.

## V. Count VI

Count VI of Plaintiffs' Complaint alleges that Defendants violated the IFCA by engaging in the same conduct alleged in Counts I, II, IV, and V through submitting false claims

18

to Medicaid, a partially state-funded medical assistance program. Defendants generally move to dismiss Count VI for the reasons stated in the prior Counts. Plaintiffs respond with the same arguments advanced in the prior Counts. The language of the IFCA mirrors that of the FCA. As such, FCA caselaw applies with equal force to IFCA claims. *See U.S. ex rel. Kennedy v. Aventis Pharm., Inc.*, 512 F. Supp. 2d 1158, 1163 n.2 (N.D. Ill. 2007). Accordingly, the Court's rulings with regard to Counts I – V are equally applicable to the parallel IFCA claims contained within Count VI.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss [63] is granted in part and denied in part. Plaintiffs are granted leave to amend their Complaint within 14 days of the entry of this Order.

Dated: March 26, 2015

SARA L. ELLIS
United States District Judge